## Vandivier v. Daviess.

(Decided November 4, 1932.)

R. W. KEENON for appellant.

E. W. DRAFFEN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal is prosecuted from a judgment of the Mercer circuit court, overruling appellant's exceptions to the admission of alleged incompetent evidence and refusal to admit alleged competent evidence and also appellant's exceptions to the report of the commissioners filed in appellant's suit in equity against M. M. Daviess for the dissolution and settlement of their real estate partnership and to obtain an accounting by and a recovery against appellee of his share of said certain parternership property, funds, and profits alleged to be wrongfully withheld by Daviess.

The facts appear by the record to be that the appellant, William Vandivier, and appellee, M. M. Daviess, hereinafter referred to as plaintiff and defendant respectively, were, prior to their assumption of the partnership relations involved in this controversy, friends and residents of Harrodsburg, Ky., where, previous to this matter, they had handled some investment transactions as partners.

By the pleadings and proof herein, it is alleged and shown that in January, 1924, the plaintiff, Vandivier, went to Miami, Fla., when that section was enjoying a hectic boom in its real estate market and that, attracted as an investor there, he soon joined the crowd of eager investors by purchasing for cash, at a price of some $6,000, from one Alonzo Riley, lots 7 and 8 of Brickell's addition to Miami, Fla.; that shortly after purchasing the lots, he borrowed from the ——— Trust Company in Miami the sum of $18,000, with which to

erect an apartment building upon lot 8, and secured said loan by a mortgage on the lots and on the improvements to be erected therewith thereon.

Pursuant to this plan, he did erect at a cost of some $18,000 an apartment building containing some twelve apartments on the lot.

In the following February, the defendant Daviess came to Miami and, on seeing the development being made by plaintiff, requested that he sell him his adjoining lot 7, which he did at a cash price of some $3,500 or $4,000, upon which defendant at once also began and completed the construction of an apartment building similar to the one on lot 7 at a like cost of some $18,000, paid therefor by defendant out of his individual means.

These two apartments thus constructed by them were named and are hereinafter referred to as the "Blue Grass Apartments."

About the time of the completion of these buildings, at any rate, prior to June, 1925, plaintiff and defendant decided that they would enter into a partnership in the ownership and handling of these Blue Grass Apartments and also in the purchase and sale of other Florida lots and real estate. This agreement was made orally between them and was to continue for no definite time. Title to the Blue Grass Apartments remained in the plaintiff Vandivier.

Shortly thereafter, it appears they bought lots 9 and 10 adjoining their apartments, which at the time were encumbered by a vendor's lien of some $4,700 and that title to these lots were taken in defendant's name. Also it appears that the parties, acting as partners, bought and sold a number of other Florida lots as well as buying individually several other properties.

Later, it appears, in the fall of 1924, Vandivier secured a Mrs. Yates as a purchaser for the Blue Grass Apartments at a cost of $95,000, under which contract she took deed and possession therefor the following January, and by the terms of the purchase contract of these apartments at $95,000, she executed a series of six notes, each in the amount of $9,500 with interest at 8 per cent. from date and payable respectively in one to six years on and from January, 1926. She also assumed plaintiff's outstanding mortgage of $18,000 upon

the apartment building erected by him on lot 8, assigned two lien notes referred to in the record as "McDougle notes" each for $5,000, and made cash payment of $10,000.

It appears that she later also purchased the adjoining lots 9 and 10 hereinbefore mentioned.

It appears that Mrs. Yates paid only one, or the first, of these series of six purchase-money notes and some $3,000 in interest upon the $18,000 mortgage of plaintiff assumed by her in part payment of her purchase price for the property.

It appears that the business of this partnership was managed and looked after by the plaintiff, who, while owning and operating a grain and feed business at his home in Harrodsburg, yet spent his winters in Florida looking after the matters of this real estate partnership, giving his time and service in the supervision of its affairs while paying his own expenses incurred while so doing.

It also appears that the defendant, M. M. Daviess, was the capitalist of the firm, who furnished the investment funds called for in handling the real estate transactions undertaken, though giving little time or personal attention to the management of the partnership, but remaining at his home in Harrodsburg, there looking after matters of his individual concern and business.

It further appears that the partnership of the parties operated rather actively and extensively during the first year after its formation, with the result that by the summer of 1925 it held over $100,000 of Florida lots or land lien notes acquired in the course of their various partnership transactions in real estate investments.

All went smoothly and satisfactorily, it appears, with the firm and a harmonious relationship existed between the partners during the golden days of the boom, when all the lien notes held by the partnership were regarded as of full face value and their paper profits showed a gratifying result of their firm business. Later, however, with the collapse of this prosperous era and when properties were turned back on the sellers' hands and when equities and values held under junior liens, until then considered real and substantial, became

worthless, friction and suspicion arose between these partners as to what were their several rights and interest in the partnership property and paper profits.

Mrs. Yates, the purchaser of the Blue Grass Apartments, after having made the cash payment of $10,000 and the payment of her first note for $9,500 and a payment of $3,000 upon the assumed $18,000 mortgage and some other interest, defaulted in the payment of the balance owing upon her purchase debt, whereupon foreclosure proceedings were instituted against her and the Blue Grass Apartments and also lots 9 and 10, upon which she had also defaulted in payment of the purchase price thereupon, were foreclosed and sold at public auction. The apartments were bidden in at some $35,000 and title taken thereto in defendant's name, while that of the unimproved lots 9 and 10 was taken in the name of the plaintiff. It appears that the firm's equity in the latter lots was later released upon foreclosure proceedings had upon the senior purchase-money lien against same.

It further appears that, after the Blue Grass Apartments were recovered upon foreclosure proceedings, they were looked after and rented out for a while by the plaintiff and associate manager, Mr. Stevens, and that the rents collected during such period of his supervision of the apartments were applied either to the payment of the current expenses of the firm or else to the Mercer National Bank of Harrodsburg and deposited to the firm account of Vandivier and Daviess. Also, it appears that upon the said Stevens quitting his service with them, the defendant placed his nephew in charge of the Blue Grass Apartments, who has since said time been in charge thereof, remitting the net rents derived therefrom to the defendant Daviess, who has kept same entirely within his own control, applying the money received as he saw proper upon the debts and obligations in the way of taxes, repairs, and interest owing by the partnership, and as to all of which, defendant's rental receipts and his disposition thereof, it is claimed by plaintiff he was left uninformed.

Plaintiff alleges that he repeatedly sought an accounting and settlement from the defendant of their partnership affairs, but that same were as often refused him; that later the matter of accounting and settlement of the partnership was referred to a mutual

friend, Mr. Rankin, an attorney of Harrodsburg, for his arbitration and adjustment between them, but it appears his laborious and gratuitous efforts looking to this end were futile and his report recommending a plan of settlement was declined as unacceptable, at least by the defendant.

Thereupon, plaintiff filed his suit in equity in the Mercer circuit court, wherein he alleged the facts in substance as above stated, and also that after the sale of the property to Amanda M. Yates, in the division of the notes above referred to, three of the above-described six notes were delivered to Daviess and three to this plaintiff; also, he further alleged that the above said partnership mortgage indebtedness of $18,000 given by plaintiff upon the lot 8 Blue Grass Apartments in 1924 was reduced in its amount to $9,000, $3,000 being paid by Amanda Yates and $6,000 being paid upon same by the partners out of the firm account; that the taxes and other expenses of the partnership were in part advanced by defendant and also paid out of the firm account, and, too, that the plaintiff paid out of his individual means the living expenses incurred by him in Florida while engaged in looking after the partnership business there; further, he alleged that in June, 1925, there was a partial settlement made between this plaintiff and defendant of their partnership affairs, and that in this settlement certain notes received by the firm in the course of its real estate transactions were deliverd to the plaintiff and certain other of the notes given to the defendant, in an amount larger by some $18,000, so as to make an equal division of their respective rights as of that date; and sought judgment for the dissolution of the partnership and settlement of the property and accounts of the firm and a division of the assets after the payment of the firm's indebtedness; that the cause be referred to the master commissioner for settlement of the business and accounts of the partnership and to hear such proof as either party might present; that the defendant be required to render an accounting of all transactions had by him with the partnership and settle his accounts with the master commissioner, who should hear proof on all questions as to a proper settlement and adjustment of said partnership, audit such settlement, and report same to the court.

The defendant filed answer and amended answer thereto, when proof was heard by the commissioners

appointed upon the matters referred to them, and thereupon filed report of their findings, by which they recommended as follows:

"As they were in the beginning equal partners we recommend that the entire proposition be worked out and settled on that basis:

"That we have a common treasurer (assumed), and charge each partner with all money he received at any time (which has not heretofore been turned into partnership) and has been holding individually, having the use of same, to pay 6% interest from time collected to time of settlement. We recommend that proper sale of the Blue Grass Apartments as soon as possible, and pay that portion of the mortgage remaining unpaid and interest thereon, due to the Farmers Trust Co., Harrodsburg, Ky., and balance of said proceeds of sale of Blue Grass Apartments, if there be any, to be sold and paid out as directed by the Court.

"We further recommend that all money paid out by either partner for partnership expenses shall be credited to each partner according to amount paid with interest from date paid to date of settlement.

"All notes uncollected at time of this settlement to be held by First-Mercer National Bank, Harrodsburg, Ky., for collection and held in trust for the benefit of Vandvier and Daviess as their interest may appear at that time."

Thereupon plaintiff filed reply, wherein he sought to recover reimbursement of one-half of his expenses incurred in the sum of $1,500 expended by him while engaged in attending to firm business in Florida and also in the sum of $5,000 alleged paid by him in reconstructing defendant's storm damaged apartment building erected by him on lot 7. Plaintiff alleged that by reason of the $18,000 mortgage placed upon his Blue Grass Apartment building, he was required to insure the same in the interest of the mortgagee and that he did insure the same in the interest of said mortgagee as a separate and individual insurance contract and personally paid the premiums thereon; that thereafter, his said apartment building, as well as that of the defendant, being wrecked by a destructive tornado, he col-

lected upon said insurance policy the sum of $10,000, which, with the consent of his mortgagee, he applied to reconstructing both apartment buildings then equally damaged; that he, in so doing, paid from his individual funds $5,000 of his separate insurance money to the defendant through the expenditure of such amount in the reconstruction of his apartment building and also asked that he be adjudged to recover the amount of $1,500 as one-half of his expense incurred while looking after the firm's business in Florida and a further sum of $5,000 of his insurance recovery paid for the use and benefit of the defendant as stated.

Defendant by his amended answer denied that there was any settlement made by the defendant of the partnership notes in June, 1925, as alleged, or that he at such time gave him of the $100,000 of notes then held by them notes in the amount of some $18,000 over and above the share thereof retained by him in order to equalize the defendant with plaintiff in the partnership by reason of plaintiff's apartment building contributed thereto being encumbered with the $18,000 mortgage.

Defendant states further that upon the occasion stated, in which it is claimed such settlement of the partnership notes were made, only the six Yates notes of $9,500 each and the two McDougle notes of $5,000 each were then divided betwen them, and that they were divided equally.

Appellant, however, contends as to the two McDougle notes, that both of them were given by him to the defendant as part of the $18,000 allotment made him over and above a one-half share thereof, and that later one of these two notes was traded back to the plaintiff by the defendant as the purchase price paid him for his individual interest in certain Florida realty.

The acting commissioners further filed a supplementary report, whereby it was recommended, by way of an accounting between the partners of their accounts and as providing a proper division and settlement of the partnership:

"1. That the defendant, M. M. Daviess expended for the partnership $8455.44, and that he is entitled out of the proceeds from the sale of the property owned jointly by plaintiff and defendant one one-half of this sum—$4227.72.

"2. That M. M. Daviess spent for the benefit of the partnership $3000 from the proceeds of the property owned jointly by M. M. Daviess and William A. Vandivier in Harrodsburg, Kentucky, and that M. M. Daviess paid $3000 on the mortgage owing by William A. Vandivier, and that M. M. Daviess is entitled to recover $3000 out of the property owned by William A. Vandivier.

"3. That there was paid out of the partnership fund $3000 on the mortgage owing by William A. Vandivier, and that M. M. Daviess is entitled to one-half of this sum towit, $1500.

"4. That William A. Vandivier is indebted to M. M. Daviess in the sum of $850.00 for balance due on check given by William A. Vandivier, which has never been paid.

"5. That William A. Vandivier is indebted to M. M. Daviess in the sum of $165.00 for loss on sugar.

"6. That the total amount owing by William A. Vandivier to M. M. Daviess, as stated in above items is $9742.72.

"7. That in view of our conclusions in the original report that there was never any division of the notes owned by the partnership, we find that M. M. Daviess collected the first Yates note of $9500.00 and the Moffet note of $1312, making a total of $10,812, and that William A. Vandivier collected on the Futch and Shipp notes $50 and $1000 on the Hunt note, making a total of $1050. That these notes were owned jointly by the firm and that William A. Vandivier is entitled to one-half of the proceeds of these four notes, less the amounts collected by him, making a total of $4881, that Daviess would owe Vandivier.

"8. That William A. Vandivier is not entitled to any credit for moneys received from the insurance on the building.

"9. That on the question of the money paid out by Vandivier for expenses in looking after the property, and for services rendered in looking after the property, that Wiliam A. Vandivier is not entitled to anything for services, but he is allowed

the sum of $200.00 for railroad fare and expenses incurred in going from Kentucky to Florida.

"10. That M. M. Daviess is not entitled to any rent for the use of that warehouse for the storage of the sugar, nor any interest on the money invested in the sugar transaction.

"11. That the original mortgage given by William A. Vandivier on the apartment constructed by him was $18,000; that this was reduced to $9,000; that the mortgage was foreclosed on the property and expense of $1700 incurred; that a new mortgage was then executed on the property for $10,700, and that of the cost Daviess should pay one-half, or $850; that William A. Vandivier owes a balance on the mortgage as of this date of $9850, and in addition thereto that M. M. Daviess has paid $900 in interest on the mortgage making a total that William A. Vandivier owes on the said property of $10,750.00.

"12. That William A. Vandivier owes M. M. Daviess $9742.72, and that M. M. Daviess owes to William A. Vandivier $5081.00, leaving a balance due by Vandivier to Daviess of $4661.72.

"13. That the two lots nos. 7 and 8, known as the Blue Grass Apartment, belong jointly to William A. Vandivier and M. M. Daviess; that out of the sale of the property from William A. Vandivier cash there should first be deducted $15,411.72.

"14. We report that we have been in Harrodsburg considering this case for 13 days, and in addition each of us have considered it at home for a number of days, and we ask that we be allowed a reasonable sum for services rendered, considering the time we have spent in the court and outside the court in consideration of the case, not less than Ten ($10.00) dollars per day, which we consider reasonable and proper.

"15. We further report that the balance of the notes and the property are now owned jointly by William A. Vandivier and M. M. Daviess, and that said Vandivier is also the owner of the one half of the Highlea property.

"16. That we recommend the attorneys herein be allowed reasonable fees, to R. W. Keenon,

Attorney for the plaintiff to Errol W. Draffen, attorney for the defendant, which should be taxed as part of the cost in this settlement and be paid out of the partnership assets.''

This report, as to all its findings and recommendations, was excepted to by plaintiff, all of which exceptions were in turn overruled, and the commissioners' report approved and confirmed by the court as a proper settlement between the partners of their several accounts, rights, and interests as against each other in the partnership estate.

Excepting to the court's judgment in overruling plaintiff's exceptions to the commissioners' report, this appeal is prosecuted.

The appellant has presented a very vexed and confused record for our consideration upon which to determine the controversy here involved as to the rights and interests in the partnership property and profits and as to what should be proper division of it between them. Practically no dependable accounts were kept by plaintiff of the business of the partnership left under his management.

In undertaking to make a rightful and fair disposition of the jarring and conflicting claims of these partners, we find little help and assistance to such end in the confused and contradictory evidence of the parties submitted us by the record, nor are we assisted in our review of these matters upon appeal by the judgment of the learned chancellor below, who, it appears from the language of his decree as entered, has here waived the task presented of determining the equities of the parties litigant upon the hearing of this cause, but has given only a ''casual reading'' of the record and a hasty overruling of all exceptions made by plaintiff to admission of alleged incompetent evidence, and passed up for our review here the whole confused problem of the proper accounting and settlement of this partnership estate..

However, we have carefully and repeatedly read and considered the evidence and claims and counterclaims of the litigants herein and the arguments and extensive briefs of their respective counsels, and have concluded that appellant's exceptions as to some parts thereof and recommendations of the commissioners' report and supplemental report are meritorious.

Addressing ourselves to this complaint of error, we find that the first five items contained in the commissioners' supplemental report total $9,742.72, which is, as stated in item 6 of the report, owing by William A. Vandivier to M. M. Daviess for advances to the partnership estate by Daviess from his individual funds. However, $850 thereof, with interest of some $200 thereon, was loaned by Daviess to Vandiver personally.

As to the latter item of the loan, we find that it is admitted by the defendant Daviess that the amount of this personal loan of $850 to Vandivier was included in the $18,700 mortgage executed to the Farmers' Trust Company of Harrodsburg, and therefore we find that this item No. 4 of the report constitutes a double allowance of the $850 loan and is in error and plaintiff's exception therefore to item 4 should have been sustained.

Also, we find that part of item 7 of the report to the effect the defendant collected $9,500 of the Yates notes and $1,312 of the Moffet note, making a total of $10,812, to be correct; but we further find that Vandivier collected on the Futch and Shipp notes $50 and $1,000 on the Hunt note, making a total of $1,050, and that the charge to him of such an amount is in error to the extent of the $1,000 Hunt note collection charged against him, in that we find from the evidence heard that the $1,000 Hunt note collected by Vandivier was in turn paid by him to the attorneys of the partnership upon their fee for foreclosing the Yates mortgage, a partnership obligation, and therefore is not properly chargeable to Vandivier as money collected and used by him. Therefore, from the $10,800 recited as collected in item 7 by Daviess, Daviess should be credited with the sum of only $50, collected by Vandivier upon the Futch and Shipp notes, leaving amount of $10,762 as collected by Daviess in excess of that collected upon partnership notes by Vandivier upon which he should be charged with interest from date received as a withdrawal from the firm funds of such an amount and one-half of which was found by the commissioners to be owing by him to Vandivier.

As to item 8 of the report, that William A. Vandivier is not entitled to any credit for moneys received from the insurance on the building and applied to the reconstruction of Daviess' apartment, we approve said

finding upon the grounds that the evidence did not sustain plaintiff's claim that the policy of insurance upon which the same was collected was one taken by the plaintiff upon his separate interest in the Blue Grass Apartments and premium paid by him therefor as his separate property, rather than as a firm asset, as was found to be the case in Cassidy & Hogard v. Jenkins & Cassidy, 226 Ky. 828, 11 S. W. (2d) 946, 61 A. L. R. 1198.

As to item 9 of the commissioners' report, refusing allowance to plaintiff for services rendered by him in Florida in looking after the property and in the expenses incurred and money expended by him during his two winters spent in Florida while so doing, we conclude that the recommendation is correct in denying a recovery for the services but not in refusing him reimbursement by one-half of the amount of the expenses incurred and money expended by him therefor, which expenditure is shown by the evidence to have been $1,500 as one-half of the reasonable amount of $3,000 so expended by him. We are further of the opinion that Vandivier should be allowed interest thereon from the date of its expenditure by him.

Referring again to item 7 of the report, wherein Daviess is directed to credit his claims against Vandivier with one-half of the corrected amount of $10,762 collected upon partnership notes and appropriated to his use, we are further of the opinion that Daviess should be charged with interest upon said amount from the time withdrawn and Vandivier credited with one-half of said amount and interest, thus ratably offsetting his charge of interest to Vandivier upon his advances or payments made on behalf of the firm.

As to item 10 of the report, disallowing the Daviess claim for rent for the use of warehouse for the storage of sugar in the matter of a previous partnership and as to which there does not appear to have been any agreement, we approve the finding of the commissioners in disallowing same, with the result that plaintiff's exceptions thereto were properly overruled.

We are further of the opinion that the settlement alleged made by Vandivier between himself and Daviess of all the partnership notes held by them about June, 1925, was not established by the evidence to have been made and that the said partners continued to hold

property and notes of the partnership as equal partners therein, chargeable with any amounts received and not paid over to the partnership with interest thereon from the time received and so paid, and that each partner has a right to collect, out of the partnership assets remaining after the payment of debts, amounts loaned to the partnership by either of the partners with interest.

We are further of the opinion that the interest of the plaintiff Vandivier in the partnership should be charged with the amount of the mortgage of $10,700 now owing the Farmers' Trust Company of Harrodsburg, and representing the unpaid balance of the original $18,000 mortgage placed by him upon his apartment building when contributed to the partnership estate, to equalize the contribution thereto by Daviess of a like apartment building upon which there was no encumbrance.

As to the item of $1,700 attorney's foreclosure fees, we are of the opinion that Daviess should pay one-half thereof as an expense incurred in the operation of the partnership estate.

We are of the opinion that item 12 of the report is to be modified in keeping with the directions as hereinabove set out.

Likewise, for the reasons stated, item 13 of the report recommending the sale of the lots and the application of the proceeds thereof is approved to the extent of making the sale as directed, but modified as to the application of the sale proceeds in keeping with the directions hereinabove given, and the net amounts remaining of the sale proceeds after payment of debts and costs, as herein directed, to be equally divided between the said partners.

Likewise, we are further of the opinion that items 15 and 16 of said report should be and are approved.

Judgment is reversed, and cause remanded for the purpose of having calculations made in accordance with this opinion, and judgment then to be entered accordingly.